May it please the Court, my name is Suzanne Lee Elliott, and I represent Mr. Hill in this matter. This is an appeal from the District Court's denial of Hill's habeas petition. The parties agree that Strickland v. Washington provides the very familiar framework for the evaluation of whether Mr. Hill's trial counsel was ineffective in this matter. The District Court found both that trial counsel's performance was not deficient, although he said that was a close question, and even if there was deficient performance, there was no prejudice to Hill. Hill respectfully disagrees with both of those findings, in particular with the, well, starting with the Court's finding that Hill's trial counsel was not deficient for failing to conduct a thorough pretrial investigation of Hill's mental state, as well as adopting a strategy of presenting a lack of intent theory of the case. If that's all, if that all goes your way, what about prejudice? Well, the prejudice here is this, Dr. Whitehill said that it was clear that Hill was suffering from PTSD at the time of the incident, described the symptomatology, and suggested that Hill, that there was a period of time after the victim told him that she had cheated on him that he was in a disassociative state. So provided the framework for a jury to find that the mental health condition that Hill suffered from contributed to, or could have, interfered with his ability to form the premeditation portion of the first-degree attempted murder. Judge Bryan, I think, said proving PTSD was not enough, right? I think that's what Judge Bryan said. That's what Judge Bryan said. So can you tell me, why was he wrong about that? He was wrong about that because that was the question in the case. Mr. Hill testified that he didn't intend to kill the victim in this case. We're only talking about the attempted premeditated murder. He agreed to the assault. Tough evidence for your client, you know, the gloves, putting on the gloves of going into the house. Yes, and Dr. Whitehill indicated- Parking 700 feet away to avoid detection, etc. And his testimony, his statements to his lawyer and his testimony during trial was that he had formed an intent, but the intent was not to kill, it was to reconcile. So his testimony was, in fact, contrary to that theory of defense. Well, it was, you mean at trial? At trial, his statements to his lawyer, according to Mr. Chin. Well, according to Mr. Chin, yes. But the evidence, but what Dr. Whitehill said was you can intend to do a lot of things, but it's the intent to kill, which occurred, should have occurred at the time that he was in the house. He said he went in with the intent to reconcile, but then- But I think the point that we're, if I could get you to focus on, to help us. I think the point is, is there testimony in the record that you can intend to do a lot of things and still be in a disassociative state? I believe Dr. Whitehill said that you can intend to do a lot of things and still be in a disassociative state, but he placed the disassociative state after Mr. Hill entered the house. Do you know where I find that in Whitehill's testimony? Ah, yes. I will, if I could do that- Maybe you want to come back up? When I come back up, I will tell you that. And if I can't find it in my briefing, I will send in a letter to the court and let them know. But the, so under Strickland, of course, we have to prove prejudice, but here's what the prosecutor argued in closing. He argued that Hill made up his testimony after listening to all of the other witnesses in the case. Probably misconduct, wasn't raised, but this evidence of PTSD would have rebutted that argument. The prosecutor also argued that Hill tried to commit suicide in the Pierce County Jail because he wanted to avoid a third strike. The PTSD would have rebutted that argument. There was also evidence that the opposing counsel raises that, for example, Dr. Whitehill testified that he was malingering and was exaggerating his symptoms. I mean, that was their own expert giving this testimony in his report about Hill's mental state. And so obviously had a diminished capacity defense been raised, then the prosecutor and the prosecutor's expert would have a chance to investigate this. And I guess the argument is that the test, the evidence that the prosecutor could then develop would have been very damaging. What's your response to that? Well, my response to the malingering was at the DOC in the first, where the, in the prior prison term that Mr. Hill served. So his, what the DOC did was they did this investigation of his mental state and the evaluator there found that his malingering was on elevated scales. And then that same evaluator said, we have to rule out PTSD in this case. And of course, rule out doesn't mean it doesn't exist. It means do more investigation. Dr. Whitehill went on to say that Mr. Hill had, during the pendency of this habeas, had this much more, and not for purpose of the habeas, but because he's now in a veterans unit, but had, and he was seeking a compensation from the military, had a extensive PTSD workup and there was no evidence of malingering when that was done. So again, I think that there had Mr. Chin adopted a reasonable strategy and done a reasonable investigation of this case, that there may have been some evidence of that, but it wouldn't be as devastating as the, as Glebe asserts here. But isn't it a very deferential standard? And the fact that counsel did consider alternative strategies and chose not to present certain strategies, isn't that perfectly fine under the standard? Not in, I agree, Strickland says you give deference, but you only give deference when the trial attorney has engaged in a thorough and searching investigation before adopting that strategy. Our cases do say that if there's a reason not to, if you reasonably decide not to investigate, that's also something we defer to. So the argument is made that he made a reasonable decision that investigation wasn't necessary because going that direction would have prevented Hill from testifying, would have potentially raised damaging testimony, et cetera, some of the concerns that you've heard. Well, I, the record doesn't reflect that Mr. Chin made that reasonable investigation before he presented his strategy at trial. He may have come up with that post hoc, but he didn't do a social history. He, I mean, first of all, he was on notice. Hill had, he knew Hill had been in the military. He knew Hill had tried to commit suicide the minute he was booked into the jail. He didn't do a social history and he saw his client in an attempted premeditated murder case six times more or less over the almost two year period pre-trial. There's one interval, I think for a year he did. Yeah, he didn't see him at all. He didn't see him for a year. So I don't think that Mr. Chin, quite frankly, is entitled to his, his adoption of this strategy was entitled to any deference. His description of, of his interactions with Mr. Hill, I think are suspect, but certainly that was, their relationship was probably, or the, the nature of their relationship was exacerbated by the fact that Mr. Chin didn't seem to have any interest in working with Mr. Hill in the case during that time. And so your strongest prejudice argument is? My strongest... The prong to, if you could give me your strongest prong to argument. My strongest prong to argument is that it would have rebutted everything that the prosecutor said in closing about Hill's testimony, which was consistent with the PTSD, Hill's own testimony that he didn't intend, and the testimony of the witnesses that he appeared to be a different person at the time of the attack. And you think Whitehall's test, expert opinion would support that he could have formed, could have been in a disassociative state and could have still intended to go there to reconcile. He could, he, he, he intended to go there to reconcile and once there, when told of this particular, when told by the victim she wanted to, she had cheated on him, was at the point at which the PTSD kicked in. So that theory would assume is that the prosecutor wouldn't develop any evidence, any other evidence than what the prosecutor already presented. Is that right? So that the prosecutor couldn't have produced other evidence. I'm sure the prosecutor could have cross-examined and... And expert testimony that cast doubt on Hill's credibility and the like. I mean, that's, that's the, in fact, the district court even said it's pretty hard to prove a diminished capacity defense. So the prosecutor, so the opposing counsel says, well, the prosecutor could have produced all of this damaging evidence had Mr. Hill decide to pursue a diminished capacity defense. Well, one, we don't know that because Mr. Chin didn't know that. Right. But we have to assume that for purposes of considering prejudice, right? The Supreme Court has told us to do that. You could assume that, but there's always a dispute in these mental health cases. And it's not so overwhelmingly prejudicial that in one test he had elevated malingering, even though they still said ruled out PTSD. He could have had this evaluation by the VA that said he wasn't malingering. And the record of his military history and the various horrible things that he experienced there supported that. And so Hill would not have been able to testify as to his intent to reconcile. Is that right? Or do you see that? I don't see that as being broken at all. So he wasn't able to form any intent because he had diminished capacity, but he could have, he could testify as to his intent. Yes. I mean, he could, he could testify he didn't, he lost it or whatever that he disassociated at the time that he attacked the victim. He could have talked about that. Did you want to save the rest of your time? I do want to save the rest of my time for rebuttal. Thank you. May it please the court. John Sampson, assistant attorney general for the respondent appellee. The district court correctly denied relief because Mr. Hill failed to prove the counsel's performance in choosing a defense was deficient and he failed to prove prejudice from that decision not to present a diminished capacity defense. Addressing the first prong of deficiency. There are three reasons why Mr. Hill's claim fails. First, the statements to Mr. Chin prior to trial did not suggest to him that there was a red flag of diminished capacity. Second, the medical records and military records that existed at the time of trial would not have informed Mr. Chin that either PTSD or diminished capacity was present. And third, counsel reasonably recognized there were serious risks if he pursued a defense of diminished capacity. If he had talked to his client and taken a social history to understand what this person had been through in the course of his military service, would he not have understood that  Your Honor, he admitted in the evidentiary hearing that if he had talked to him, then yes, he could have seen that PTSD itself may have been an issue. But at the time of trial, no psychiatrist, psychologist, the VA had not. That really goes to your arguments in the brief. Forgive me for cutting you off, but you've got three points and it seems to me the other two might be worth exploring. But whether the military records show PTSD or not, because that diagnosis hadn't been made, but if he'd talked to his client, I think he's conceded he would have recognized that this person's military service and his experiences were such that that was a very real possibility. I would agree with that, Your Honor. But a significant point is that PTSD is not diminished capacity. I understand. And that was my point earlier. The judge Brian said PTSD is not enough. Yes. Right. And so the second part of the military records is there's nothing in there at the time of trial showing diminished capacity, including Dr. Whitehill's examination, which was done not for diminished capacity, but was done for competency. But that report said that he was psychologically stable, understood what was going on, and there was no recommendation for a further follow-up. Is it your understanding or what can you tell me about what's in the record to support the notion that a person could be in a disassociative state and still have formed an intent, for example, intent to go there to reconcile with his girlfriend as opposed to attacking her? Your Honor, I'm not sure that Dr. Whitehill ever specifically said that, but I know that in his declaration submitted in support of a request for an evidentiary hearing, he did say that the disassociative state may have occurred when Jennifer Schlatter told Mr. Hill, I've cheated on you with other men. And if that occurred in the bedroom, as Mr. Hill claims, then that could have triggered the disassociative state. But it wouldn't negate, is that your theory then, that even if that happened, that he still, the evidence is such that there's pretty strong circumstantial evidence. I think that's the state's position that he went there with an intent to do harm, the parking spot and gloves and whatnot. And then that when confronted with this very disturbing news, even if he went into a disassociative state at that time, is it your position that that wouldn't have changed his culpability, his legal culpability? Your Honor, we have a couple of points on that. The first is that the state's position is that Jennifer told Mr. Hill that she had had sex with Jeff in a phone call several hours before, and then he engaged in all this behavior that showed the ability to form intent. And the jury rejected Mr. Hill's testimony that she told him about it first time when they were in the bedroom and they started wrestling over the camera to see the picture. So the jury rejected the premise of a psychological opinion that the disassociative state occurred in the, started in the bedroom. The second is that Dr. White Hill's opinion is a mere possibility. He has not said, and he cannot say to a probability that Mr. Hill had a disassociative state even in the bedroom because he has not conducted the necessary psychological examination. And so it's just, it's, it's speculative. And if you presented, first we would argue that that's not admissible under Washington law. Under State v. Thomas, which is cited in our brief, the mere possibility that a mental disorder may have led to a disassociative state is not enough to get the evidence admitted. But even if it was, the jury would not have accepted that mere possibility in light of all the other evidence, including the fact that Mr. Hill declared three times why he was there. When he burst into the room, he declared, I'm going to effing kill you, and then called her a swear word. Then when he was resting... Forgive me, upon entering the room... Upon entering the room... Or being confronted with the photo. Yes, Your Honor. So the State's position is he knew beforehand that... I know that's the phone call, driving over there. But I'm asking a different question in response to what you just said, that he made this statement threatening to kill when he entered the room. Yes. That's Jennifer's testimony is he made that statement when he entered the room. They did not have a conversation in the bedroom. He... So can I, forgive me, but I know her parents got involved a little later. They didn't test, or did they? I don't think they testified to that statement, to that threat, because they didn't hear that yet. Is that right? Not to that one. They testified to a different one. Yes. So Mr. Schlatter, the father, he testified that when he was wrestling with Mr. Hill, Mr. Hill got him in a choke hold, and Mr. Hill said he was going to kill him. Yes. And that is at... I've got it. 78 to 79 of the supplemental. And the mother? And the mother testified that he tried to throw her over the railing, which would have been about a 16-foot drop, which could have potentially been... Does she testify? I guess I didn't ask a very good question. What I mean is, does she testify that she heard either of the other two statements? I don't believe so, Your Honor. But definitely the father heard that statement. And then the third statement indicating his intent had been formed was after he chased Jennifer out into the patio and continued to assault her, kicking her in the face, he declared, this is what you get for cheating on me. And again, called her a swear word. Those three express statements of intent would refute any possibility opinion from Dr. Whitehill, and the jury would have rejected it. So even assuming that counsel was deficient, and even assuming that this evidence would have been admissible, which state contends it would not have been admissible, the jury would not have accepted it. There is not a reasonable probability that the outcome would have been different. And there were significant risks, as Mr. Chin pointed out, and as the district court found in pursuing this line of evidence. Mr. Chin, or Mr. Chin knew that Mr. Hill would be subject to an examination by the state's expert, in which case they can ask him about the crime. And he could potentially disclose incriminating statements. The prosecution would be able to get everything that the defense had, including the test results and counsel sites to the prior prison psychiatrist who said, who diagnosed Mr. Hill and commented that he appeared to be exaggerating his statements for secondary gain, which is a form of malingering, which means he's faking it in order to get some benefit. And he would have also have to disclose Dr. Whitehill's test. And Dr. Whitehill's test showed that Mr. Hill was, quote, faking bad, unquote. And this Whitehill's own examination revealed a potential for exaggeration of symptoms for secondary gain. So the jury would have heard that. So if they tried to present a defense of diminished capacity, all that information could have come out and it would have posed a risk. Now, would that been enough? We don't know. But what we do know is that that supports counsel's decision not to pursue a defense of diminished capacity. Another thing that supports that decision is Dr. Whitehill's testimony and Mr. Chin's testimony that a defense of diminished capacity is viewed as a last resort defense. It's rarely successful. And as Dr. Whitehill testified, he has examined several hundred defendants for possible diminished capacity. And he's found only 10 where it's actually a true, in his opinion, a true case of diminished capacity. And I believe the testimony at the evidentiary hearing was that none of those succeeded or maybe one of them succeeded. So there were significant risks in pursuing a defense of diminished capacity. And those all go to show that counsel's decision was reasonable. The Supreme Court is also recognizing, and I know that we have already talked about the statements that Mr. Hill made to Mr. Chin, but the Supreme Court has recognized that often the decision of what defense to pursue will be based on the statements made by the client to the defense attorney. And in this case, Mr. Chin was a very experienced defense attorney. He had represented countless defendants and he considered and even presented defenses based on diminished capacity. And in his mind, hearing all the deliberative steps that Mr. Hill took in going to the house, putting on gloves, waiting till everybody was asleep, looking for a spare key. Then when he couldn't find that, moving the items around so that he could gain access into the kitchen window. All of those in his mind indicated to Mr. Chin that there were deliberate acts. He was able to form intent. There was not a risk of diminished capacity. And as Mr. Chin indicated, there was no red flag. And I believe I've addressed all the points that I needed to address unless the court has any questions. I'd ask that the court affirm the district court. Apparently not. Thank you. Thank you. You have some time for rebuttal. I do. Thank you, Your Honor. I would briefly like to say it's 178. All right. Thank you. You're welcome. Starting with the last point, I think that Mr. Chin's experience exacerbates the problem here, does not excuse his failure to perform. Someone with that kind of experience, with the knowledge that he had about Mr. Hill should have further investigated. I do not know, and the record does not reveal, why he sent Mr. Hill out for a nothing more. I don't think that excuses his behavior. Dr. Whitehill's quite clear that Mr. Chin asked for nothing more. The argument that it's a defensive last resort, I don't think holds much weight either way because it's an individualized decision in each case, what defense to raise for your client. And here Mr. Chin did nothing to, he adopted this lack of intent strategy, but he did nothing to support it with the mental health evidence that would have supported it. And in fact, he even went further and didn't propose the lesser included offense instructions that would have permitted the jury to adopt his lack of intent instruction. So I don't think we can say the jury rejected all of Mr. Hill's testimony. They were left, as the Supreme Court talked about in Kibler, with an all or nothing choice, which is a terrible choice to leave the jury with, according to the United States Supreme Court. Finally, I would say that as to the to the mother and father and the actions Mr. Hill took, the state didn't charge Mr. Hill with premeditated attempted murder as to either of those people. So they either discounted Mr. Hill's statements at those times or simply decided that in the case that it was enough to charge it as to the third victim. So I don't think we can put much weight in the statements of I'm going to kill you, that's a phrase that sometimes indicates intent and other times simply indicates the level of anger that someone has. So we would ask this court to find that Judge Bryant erred, that there was deficient performance, that it was prejudicial, reverse the district court and remand for further proceedings. Thank you. Thank you. The case of Scott Michael Hill versus Patrick Glabe is admitted and the court for this session stands adjourned.
judges: Ikuta, Christen, Choe-Groves